UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS COLON,

                              Plaintiff,

                -against-

CITY OF NEW YORK, STEVEN BANKS,
JENNIFER YEAW, JILL BERRY, MARK
L. NEAL, MATTHEW BRUNE, MARTHA
CALHOUN, PAUL LIGRESTI, ISAAC
MCGINN, JOHN AND JANE DOE,

                              Defendants.

**ORDER**

19 Civ. 10435 (PGG) (SLC)

PAUL G. GARDEPHE, U.S.D.J.:

            Plaintiff Thomas Colon asserts claims under 42 U.S.C. §§ 1981 and 1983, the

New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights

Law (the "NYCHRL") for alleged race and ancestry discrimination and retaliation.  Colon also

brings claims for selective enforcement under the Equal Protection Clause of the U.S.

Constitution and for defamation.  (Cmplt. (Dkt. No. 1)  Defendants are the City of New York

(the "City") and Plaintiff's supervisors, managers, and/or fellow employees at the City's Human

Resources Administration ("HRA"):  Steven Banks, Jennifer Yeaw, Jill Berry, Mark L. Neal,

Matthew Brune, Martha Calhoun, Paul Ligresti, and Isaac McGinn (collectively, "Defendants").

(See id.))

            On June 22, 2020, Defendants moved to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  (Def. Mot. (Dkt. No. 49))  On September 21, 2020, this Court

referred Defendants' motion to Magistrate Judge Sarah L. Cave for a Report and

Recommendation ("R&R").  (Dkt. No. 55)  On January 15, 2021, Judge Cave issued a fifty-

seven page R&R recommending that Defendants' motion be granted in part and denied in part. (<u>See</u> R&R (Dkt. No. 56) at 2, 55-56)  On February 15, 2021, Plaintiff filed objections to the R&R (Dkt. No. 62), and on March 15, 2021, Defendants filed an opposition to Plaintiff's objections.  (Dkt. No. 67)

The R&R will be adopted as set forth below.

## BACKGROUND

I.     **FACTS**[1]

A.     **The Parties**

Plaintiff Thomas Colon – "a 49-year-old male of Hispanic ancestry and race, and Mexican and Puerto Rican descent" (Cmplt. (Dkt. No. 1) at 3)[2] – "was one of the few high-level Hispanic employees working for the" HRA prior to his termination in July 2019.  (<u>Id.</u> at 1) Plaintiff began working for the HRA in 1995.  (<u>Id.</u> at 3)

Defendant Steven Banks is the Commissioner of HRA, as well as "its joint agency, the Department of Homeless Services," and Defendant Jennifer Yeaw was – "[a]t all relevant times" – Banks's Chief of Staff.  (<u>Id.</u>)  Defendant Jill Berry was the Executive Deputy Commissioner of Humans Resources Operations at HRA.  (<u>Id.</u> at 4)  Defendant Mark L. Neal is the Executive Deputy Commissioner of the Office of Human Capital Management at HRA.  (<u>Id.</u>) Defendant Matthew Brune is the Chief Operating Officer of HRA.  (<u>Id.</u>)  Defendant Martha Calhoun is the General Counsel of HRA.  (<u>Id.</u>)  Defendant Paul Ligresti is the Assistant General

---

[1]  The facts set forth in this Order are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss.  <u>See</u> <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007).

[2]  All cites to the Complaint are to page numbers, as the paragraph numbering in the Complaint is not sequential and is, at times, duplicative.  All references to page numbers in this Order are as reflected in this District's Electronic Case Files system.

Counsel of HRA.  (Id.)  Defendant Isaac McGinn was the Director of Communications at HRA.[3]
(Id.)

   The Complaint alleges that Banks, Yeaw, Berry, Neal, Brune, Calhoun, and
Ligresti – "aided by others at HRA and the City's Mayor's Office [–] were responsible for and
made personnel decisions at HRA, including the decisions to demote Plaintiff, drastically cut his
salary by 32%, bring disciplinary charges seeking his termination and, ultimately, to terminate
him."[4] (Id. at 5)

  **B.** **Colon's Employment at HRA**

   Plaintiff was a City employee for more than thirty years, and worked at HRA
from 1995 until his termination in July 2019.  (Id. at 1, 5-6)  Plaintiff received numerous
promotions during his employment at HRA, which brought increased responsibilities.  (Id. at 5-
6)  In May 2014, Plaintiff was promoted to Senior Advisor to Brune, who then served as HRA's
Chief Operating Officer.  (Id. at 6)  In August 2014, Brune named Plaintiff interim Deputy
Commissioner of Human Resources for the Office of Staff Resources ("OSR") at HRA.  (Id.)
And in January 2015, Banks named Plaintiff permanent Deputy Commissioner of Human
Resources for OSR.  (Id.)  Plaintiff's civil service title was then Administrative Staff Analyst,
Level M-4.[5]  (Id.)

---

[3]  Banks is sued in both his personal and official capacities, while the remaining individual
defendants are sued in their personal capacities.  (Id. at 3-4)  Plaintiff alleges that "each
Defendant had policymaking authority and was responsible for ensuring that employees are not
subjected to discriminatory and/or retaliatory practices."  (Id. at 5)

[4]  The Complaint alleges the following reporting structure:  Calhoun, Brune, Yeaw, and Neal
reported to Banks.  Berry reported to Brune, while Ligresti reported to Calhoun.  (Id. at 3-4)

[5]  Between November 2014 and August 2016, Plaintiff reported to Michael Laidlaw, the then
Executive Deputy Commissioner of Human Resources.  (Id. at 7)  Between August 2014 and
September 2018, Plaintiff reported to Banks, Brune, and Yeaw.  (Id.)

### C.      HRA's History with Hispanic Managerial Employees

In July 2013, former-HRA Commissioner Robert Doar met with Hispanic employees (the "Hispanic Committee") "about the lack of Hispanic employees in mid- and high-level HRA managerial positions within HRA, after receiving a signed petition about the issue." (Id. at 7)  In September 2014 and December 2014, when Banks became the new HRA Commissioner, Banks met with the Hispanic Committee to discuss this issue.  (Id. at 8)

"On April 8, 2015, the Hispanic Committee pressed [Banks] about their concerns," and on April 15, 2015, they sent Banks "statistics about the persistent lack of high-level Hispanic employees at HRA."  (Id.)  However, the Hispanic Committee's concerns have not been addressed, and Hispanic employees have faced discrimination over the past several years, including an Hispanic employee being stripped of her authority, and Plaintiff being demoted, having his salary cut, and being faced with disciplinary charges.  (Id. at 8-9)

### D.      Alleged Discrimination on the Basis of Race and Ancestry

Plaintiff complains that – although he received a number of promotions – he was paid less than "similarly situated and sometimes lesser qualified white and non-Hispanic employees."  (Id. at 9)  For example, in January 2015, when he became Deputy Commissioner of Human Resources, he was paid $130,000 and managed more than 200 employees.  (Id.)  A white female counterpart – who oversaw fewer employees – was paid roughly $25,000 more.  (Id.)  In November 2014, "Plaintiff complained to [Brune] that his senior advisor . . . a white female, made approximately $15,000.00 more than [he did], despite having no direct reports."  (Id.)  In April 2016, as a result of the Department of Homeless Services' integration into HRA, Plaintiff

took on added responsibilities, but he received no salary increase.[6]  (Id.)

### E.    Alleged Retaliation Against Plaintiff

In August 2014, when Plaintiff became Deputy Commissioner, he began "protest[ing] and resist[ing] the near-constant unlawful and discriminatory personnel actions [Banks] and [Yeaw] attempted to implement."  (Id. at 11)

#### 1.    Employee Hiring Practices

According to Plaintiff, Banks's "hiring practices involved unlawful and improper cronyism, including the appointments of unqualified white individuals, without following the [City's] competitive process, as well as hiring unqualified staff based on referrals from City Hall."  (Id.)  For example, in April 2015, when instructed by Banks and Yeaw to "absorb" an employee, Plaintiff categorized the employee at Level M-2, as was proper.  (Id.)  Banks and Yeaw became angry, and Banks "threatened to fire Plaintiff if he did not raise [the employee] from an M-2 to M-4 [classification]."  (Id.)  After Plaintiff explained why the employee could not receive an M-4 title, Banks insisted that the employee be given an M-3 title.  (Id.)  Plaintiff claims that "[d]ue to his protests," he "faced increased scrutiny and hostility from [Banks] and [Yeaw]."  (Id. at 12)

#### 2.    Mayoral Personnel Meetings

In November 2015, Plaintiff began attending weekly Mayoral Personnel

---

[6]  Beginning in August 2016, Plaintiff "frequently requested a salary increase in keeping with his new duties and the salaries of white executive and even non-executive staff."  (Id. at 10) "Between May 2016 and June 2017, Plaintiff complained about this pay disparity to [Brune] on several occasions, to no avail."  (Id.)  In July 2017, Plaintiff received a salary increase, but "only after he threatened to file an internal complaint with HRA's Equal Employment Opportunity . . . office."  (Id.)  Since July 2017, Plaintiff "was paid a lower salary than several other Assistant Deputy Commissioners and non-executive staff who have a lesser span of control and fewer responsibilities than" he did.  (Id.)

Meetings, during which Plaintiff "voiced his opposition" to unlawful personnel actions.  (Id. at 12-13)  Because of his protestations, Yeaw "continuously yelled and glared at Plaintiff, falsely accused him of wasting time and not preparing and forcefully instructed him to take certain actions during the Mayoral Personnel Meetings."  (Id. at 13)  After a December 2015 Mayoral Personnel Meeting, Plaintiff and Brune discussed Yeaw's "discriminatory behavior."  (Id.)  Yeaw "stormed into the room and yelled at Plaintiff."  (Id.)  After this incident, Plaintiff complained to Brune about Yeaw's "discrimination against him on the basis of his race and ancestry."  (Id.)

On January 27, 2016, Plaintiff "complained [to] . . . HRA's [Equal Employment Opportunity ('EEO')] Officer . . . that [Yeaw] – with [Banks's] knowledge and implicit approval – was harassing [him] on the basis of his race and ancestry."  (Id.)  Plaintiff did not file a formal EEO complaint, however, because he "[f]ear[ed] retaliation."  (Id. at 14)  Banks and Yeaw nonetheless learned of his complaint to the EEO officer, and "from in or about January 2016 until his demotion in September 2018 . . . [they] began excluding Plaintiff from high-level discussions and meetings while looking to terminate him."  (Id.)

### 3.     The 2016 Promotion Denial

In August 2016 – when the then-Executive Deputy Commissioner of Human Resources resigned – Berry, a white female with no human resources experience, was appointed acting Executive Deputy Commissioner rather than Plaintiff.  (Id.)  In October 2016, both Berry and Plaintiff interviewed for the permanent position.  (Id.)  At his second interview, Plaintiff told Brune that Berry was unqualified for the position and had received special treatment due to her race.  (Id. at 14-15)  Brune replied, "'I don't want to hear that . . . [l]et's not bring that up again. She is eminently qualified.'"  (Id. at 15)  Plaintiff asserts that "Defendants had no intention of

considering" him for the position.  (Id.)  Berry was given the permanent Executive Deputy

Commissioner position on November 14, 2016 (the "Promotion Denial").  (Id.)

### 4.      The 2016 Functional Demotion

In December 2016, Plaintiff asked Berry to change his title to First Deputy

Commissioner, Level M-5.  (Id.)  "In further discrimination and retaliation" for opposing Berry's

appointment, however, Berry stripped Plaintiff of his management duties relating to certain

divisions (the "2016 Functional Demotion).  (Id.)  "[T]o no avail," "Plaintiff complained to

[Berry] that her actions were discriminatory on the basis of race and ancestry."  (Id.)

### 5.      2016 Violations of HRA Policies and Procedures

Plaintiff alleges that he "was directed to blatantly circumvent HRA policies and

procedures in order to hire and promote unqualified white individuals."  (Id. at 16)  For example,

in December 2016, Plaintiff was directed to "'make up'" content for a job description to "ensure

approval" of a white man's promotion.  (Id.; see also id. at 16-17 (alleging that Plaintiff reported

the unlawful promotion to Ligresti, who did not respond, and warned that the New York City

Department of Investigation would flag the promotion, which it ultimately did); id. at 27-28

(discussing other alleged improper hires))  Plaintiff was questioned by the Department of

Investigation about the promotion of the unqualified employee, after which Banks "was

infuriated" with Plaintiff.  (Id. at 17)  During this time period, "Plaintiff and other Hispanic

employees in HRA continued to discriminatorily be denied fair promotion and salary increases."

(Id.)

### 6.      Plaintiff's 2018 Demotion and Salary Reduction, and the Alleged "Sabotage" of Plaintiff's Efforts to Obtain a New Position

In May 2017, "Defendants began laying the groundwork to demote and terminate

Plaintiff."  (Id.)  In June 2017, Plaintiff told Berry that he would file an internal discrimination

complaint unless he received a salary increase.  (Id. at 18)  Plaintiff's salary was then raised to $151,000.  (Id.)

In July 2017, after Yeaw resigned, Raquel Lucas became Banks's Acting Chief of Staff.  (Id. at 17)  Plaintiff learned that Banks "intended to move Lucas into an Assistant Deputy Commissioner [of Human Resources] position, after her return from maternity leave in September 2018."  (Id.)  "Lucas had no prior HR supervisory experience," however, and "Plaintiff was forced to create a job description for Lucas despite her lack of qualifications, in an unjustified move that would in the future be used to replace [him]."  (Id. at 17-18, 20)

At this same time, Berry arranged to have Plaintiff "investigated for Medicaid payroll fraud."  (Id. at 18)  Plaintiff claims that Berry took this action in retaliation for his pay-raise demand and Plaintiff's earlier internal EEO complaint.  (Id.)

In November 2017, Plaintiff interviewed for a position at the New York City Department of Design and Construction ("DDC").  (Id.)  DDC's Commissioner told Plaintiff that she wanted to offer him the position but first needed to speak with Banks.  (Id.)  Plaintiff was not offered the job (the "DDC Sabotage").  (Id. at 18-19)  Plaintiff asserts, "upon information and belief," that Banks and Calhoun spoke negatively about him to the DDC Commissioner "in retaliation for his claims of discrimination and opposition to supporting cronyism that benefitted white employees and job candidates."  (Id. at 19)

On August 28, 2018, Neal told Plaintiff that because of "Lucas' arrival in HR," the HR Partnerships division would be removed from Plaintiff's portfolio and assigned to a Black woman who – according to Plaintiff – "lacked the proper qualifications."  (Id. at 15, 19)  Plaintiff complained to Neal that the reassignment of his responsibilities was based on Plaintiff's race and ancestry.  (Id. at 19)  Neal told Plaintiff to "'prove him wrong' in order to keep the

position."  (<u>Id.</u>)

On September 12, 2018 – after Lucas returned from maternity leave – Neal told Plaintiff "that he had been demoted to a non-managerial ASA, Level M-2 position, and his salary [was] reduced by over $35,000.00 or 32%" (the "2018 Demotion and Salary Reduction").  (<u>Id.</u> at 20)  Plaintiff asserts that Banks, Brune, Yeaw, Berry, Calhoun, and Ligresti all played a part in the decision to demote him and cut his salary, and that he was demoted in "retaliation for his complaints."  (<u>Id.</u>)  Lucas "assume[d] a portion" of Plaintiff's responsibilities.  (<u>Id.</u>)  In connection with this demotion, Plaintiff was also "retaliatorily reassigned and moved to another office," where only one other employee was located, and was given no assignments.  (<u>Id.</u> at 21)  Plaintiff claims that this "demotion and deep salary cut were clearly retaliatory, discriminatory and unlawful," "[c]oming within weeks of [his] repeated objections and protests" regarding Defendants' unlawful actions.[7]  (<u>Id.</u>)

### 7.  <u>Disciplinary Charges, Termination, and Defamation</u>

In July 2017, Banks, Brune, Yeaw, Berry, Neal, Calhoun, and Ligresti singled Plaintiff out "to be investigated for Medicaid fraud in relation to whether HRA employees' salaries are paid by the City or the State through Medicaid."[8]  (<u>Id.</u> at 22)  Plaintiff asserts that

---

[7]  Plaintiff also claims that his demotion and salary reduction violated New York City Personnel Services Bulletin, Article 3, Section 320-R, which provides that managers must be informed of their right to appeal demotions and salary cuts.  (<u>Id.</u> at 21)  According to Plaintiff, he received no such notice.  (<u>Id.</u>)  On October 10, 2018, Plaintiff appealed his 2018 Demotion and Salary Reduction, and on December 10, 2018, Neal informed Plaintiff that he had been "restored to the title of Administrative Staff Analyst Managerial Level 4, with full salary and retroactive pay and benefits effective to September 12, 2018."  (<u>Id.</u> at 28)

[8]  Plaintiff asserts that, "[i]n 2017, approximately 77% of HRA's fiscal funding came from New York City funds, while the remaining 23% of HRA's fiscal funding came from State and/or Federal sources."  (<u>Id.</u> at 22)  According to Plaintiff, and pursuant to New York law, City employees performing Medicaid-related work are paid by the City.  (<u>Id.</u>)  The City is then "reimbursed by the State for these employees' salaries that are 100% attributable to Medicaid work."  (<u>Id.</u>)

any Medicaid payroll fraud or impropriety was caused by Banks, who directed subordinates to engage in the wrongdoing.  (Id. at 22-24)

On September 12, 2018, Plaintiff was charged with "Misconduct and/or Incompetence" (the "Disciplinary Charges") due to his alleged involvement with the Medicaid fraud scheme.  (Id. at 24)  According to Plaintiff, the Disciplinary Charges were retaliation for his opposition to the "agency-wide unlawful activities and discrimination."  (Id.; see id. ("Defendants falsely pinned the Medicaid misappropriation on Plaintiff to get rid of him and disguise their own unlawful conduct"); id. at 25 (alleging that, beginning in March 2015, Plaintiff had alerted senior managers about Medicaid payroll funding issues and tried to address them, to no avail); id. at 26 (discussing other employees who engaged in Medicaid payroll fraud))

On June 13, 2019 – following "a series of hearings pursuant to Section 75 of the Civil Service Law with the [City's] Office of Administrative Trials and Hearings ('OATH')" – an Administrative Law Judge ("ALJ") recommended that Plaintiff be terminated.  (Id. at 28-29)  On July 29, 2019, Banks terminated Plaintiff's employment (the "Termination").[9]  (Id. at 29)

On July 30, 2019, two newspapers reported Plaintiff's termination.  (Id.)  Plaintiff claims that the newspaper accounts "contain[] a false and defamatory statement" about him, attributed to McGinn (the "Defamation").  (Id.)

## II.   <u>PROCEDURAL HISTORY</u>

The Complaint was filed on November 8, 2019, and asserts claims for race and ancestry discrimination and retaliation against all Defendants under 42 U.S.C. §§ 1981 and 1983,

---

[9]  Plaintiff claims that, after the "wrongful termination," he "was replaced with a less-qualified white female hire."  (Id. at 29)

the NYSHRL, and the NYCHRL for discrimination and retaliation. (Cmplt. (Dkt. No. 1))  The

Complaint also asserts (1) against all Defendants a selective enforcement claim under the Equal

Protection Clause of the U.S. Constitution; and (2) against the City, Banks, and McGinn, a

defamation claim. (Id.)  Finally, the Complaint pleads a Monell claim against the City. (Id.)

On June 22, 2020, Defendants moved to dismiss. (Def. Mot. (Dkt. No. 49))  On

September 21, 2020, this Court referred Defendants' motion to Judge Cave for an R&R. (Dkt.

No. 55)  On January 15, 2021, Judge Cave issued her R&R. (Dkt. No. 56)

In her R&R, Judge Cave recommends that Defendants' motion be granted in part

and denied in part. (Id. at 55)  Judge Cave concludes that Defendant's motion should be granted

to the following extent:

> Plaintiff's claims based on his November 2014 complaints to Brune about his
> salary, his April 2015 complaints about the hiring of Employee #1, and his
> complaints about the 2015 mayoral meetings [should] be dismissed with prejudice
> as time-barred;
>
> Plaintiff's Discrimination Claims based on the 2018 Demotion and Salary
> Reduction, the Disciplinary Charges, and the Termination claims [should] be
> dismissed without prejudice[;]
>
> Plaintiff's Selective Enforcement Claim [should] be dismissed without
> prejudice[;]
>
> Plaintiff's Retaliation Claims based on his exclusion from high-level meetings,
> subjection to criticism, the 2018 Demotion and Salary Reduction, and the
> rescinding of the DDC Offer [should] be dismissed without prejudice[;]
>
> Plaintiff's Defamation Claim [should] be dismissed with prejudice[; and]
>
> . . .
>
> [Plaintiff's claims] against Individual Defendants Neal, Calhoun, Ligresti,
> McGinn and Yeaw [should be dismissed for failure to state a claim].

(Id. at 55-56 (emphasis omitted))

Judge Cave further concludes that Plaintiff's federal, NYSHRL, and NYCHRL

discrimination claims premised on (1) the 2016 Promotion Denial should be dismissed as to all individual Defendants but Brune; and (2) the 2016 Functional Demotion should be dismissed as to all individual Defendants but Berry.  (Id. at 56)

As to Plaintiff's federal, NYSHRL, and NYCHRL retaliation claims, Judge Cave concludes that Plaintiff's claims as to (1) Brune, based on the 2016 Promotion Denial; (2) Berry, based on the Functional Demotion; and (3) Banks, based on the Disciplinary Charges and the Termination are adequately pled.  (Id.)

Judge Cave further concludes that Plaintiff's Monell claim is adequately pled as to the Sections 1981 and 1983 retaliation claim based on Plaintiff's Termination.  (Id.)

Judge Cave further recommends that Plaintiff be granted leave to amend as to all claims dismissed without prejudice.  (Id.)

On February 15, 2021, Plaintiff filed objections to Judge Cave's R&R.  (Dkt. No. 62)  Plaintiff claims that Judge Cave erred in dismissing as time-barred Plaintiff's Unequal Pay Claim under Section 1981, the NYSHRL, and the NYCHRL, noting that Plaintiff continued to complain about unequal pay through June 2017, and had received "discriminatory pay check[s] . . . within the statute of limitation."  (Id. at 9; see also id. at 8)  Plaintiff further claims that Judge Cave erred in concluding that his discrimination claims are not adequately pled to the extent they are premised on the Disciplinary Charges and Termination.  (Id. at 9-10)  As to Plaintiff's Equal Protection selective enforcement claim, Plaintiff contends that – in recommending that this claim be dismissed – Judge Cave did not consider Plaintiff's argument that Banks had acted in bad faith and with malicious intent to punish Plaintiff for "opposing political cronyism" in hiring.  (Id. at 11-13)  Plaintiff also argues that Judge Cave erred in concluding that Plaintiff's race-based Sections 1981 and 1983 retaliation claim cannot proceed under the Equal Protection Clause.  (Id.

at 13-14)  Finally, Plaintiff contends that Judge Cave erred in concluding that his retaliation

claims – to the extent they are premised on the DDC Sabotage – are not adequately pled.  (Id. at

14-17)  To the extent that Plaintiff's NYCHRL retaliation claim rests on this incident, Plaintiff

contends that Judge Cave did not apply the more forgiving standard applicable under the

NYCHRL.  (Id. at 18)

       Defendants filed their opposition to Plaintiff's objections on March 15, 2021.

(Dkt. No. 67)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of Report and Recommendation

       A district court reviewing a magistrate judge's report and recommendation "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a timely objection has been made to a

magistrate judge's recommendation, the district court judge "shall make a de novo determination

of those portions of the report or specified proposed findings or recommendations to which

objection is made.  Id.  However, "[o]bjections that are merely perfunctory responses argued in

an attempt to engage the district court in a rehashing of the same arguments set forth in the

original papers will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F.

Supp. 2d 201, 211 (S.D.N.Y. 2013) (citation, quotation marks, and alteration marks omitted).

"To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review

the [R&R] strictly for clear error."  IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07

Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008).  For portions of the

R&R to which no timely objection is made, a Court's review is limited to a consideration of

whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations.  Wingate v. Bloomberg, No. 11-CV-188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note and citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

### B.    **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

"[A] plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a prima facie case."  Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010).  Instead, "the 'ordinary rules for assessing the sufficiency of a complaint' under Federal Rule of Civil Procedure 8(a)'s notice pleading standard applies."  Id. (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)).  To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and a plaintiff's claims must be "plausible on [their] face."  Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S.

at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).  Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed."  Id. at 570.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, [] documents incorporated by reference in the complaint," and documents that are "'integral' to the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); see also Nestle Waters N. Am., Inc. v. City of New York, No. 15-CV-05189 (ALC), 2016 WL 3080722, at *4 (S.D.N.Y. May 25, 2016), aff'd, 689 F. App'x 87 (2d Cir. 2017) ("a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings" (citation, quotation marks, and alteration marks omitted)).

C.    **Section 1981 and 1983 Claims**

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004); see also 42 U.S.C. § 1981(a).  Section 1983 – which is not "a source of substantive rights" – "provides a method for vindicating

federal rights elsewhere conferred, such as those conferred . . . by § 1981." Patterson, 375 F. 3d

at 225 (citations and quotation marks omitted); see id. (explaining that § 1983 "allows an action

at law against a 'person who, under color of any statute, ordinance, regulation, custom, or usage,

of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"

(quoting 42 U.S.C. § 1983)).

"'[T]he express cause of action for damages created by § 1983 constitutes

the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state

governmental units.'" Duplan v. City of New York, 888 F.3d 612, 619 (2d Cir. 2018) (quoting

Jett v. Dallas Indp. Sch. Dist., 491 U.S. 701, 733 (1989)) (emphasis in original); see also id. at

620-21 ("Because § 1983 already provides a remedy against state actors, there is no reason to

infer from the rights-conferring language of § 1981(c) that it creates an additional, and

duplicative, remedy. . . . We . . . therefore join nine of our sister Circuits in concluding

that § 1981 does not provide a separate private right of action against state actors.").

Employment discrimination claims and retaliation claims brought pursuant to

§ 1983 are analyzed under the McDonnell Douglas framework.  Bermudez v. City of New York,

783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011); Radice v. Eastport S. Manor Cent. Sch. Dist., 437 F.

Supp. 3d 198, 209 (E.D.N.Y. 2020); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973).

### D.  Selective Enforcement Claim under the Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amended provides "that all

persons similarly situated should be treated alike."  Cleburne v. Cleburne Living Ctr., 473 U.S.

432, 439 (1985).  To establish a selective enforcement claim, a plaintiff, ordinally, must show:

"(1) that [he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004) (citation and alteration marks omitted). "In short, a plaintiff must allege that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination," and "[t]o be similarly situated," means that "the individuals with whom [the plaintiff] attempts to compare [himself] must be similarly situated in all material respects." Cook v. Dubois, No. 19-CV-8317 (CS), 2021 WL 91293, at *6 (S.D.N.Y. Jan. 11, 2021) (citations and quotation marks omitted).

### E.   **Municipal Liability**

"[A] municipality cannot be held liable [under Section 1983] solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Thus, to prevail on a municipal liability claim under Section 1983, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

To determine "'municipal liability, it is necessary to conduct a separate inquiry into whether there exists a "policy" or "custom."'" Triano v. Town of Harrison, New York, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (citation omitted); see also Kucharczyk v. Westchester

Cnty., 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015) (discussing how a plaintiff may satisfy the "policy or custom" requirement).  "Normally," a plaintiff cannot satisfy this requirement "by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality."  Kucharczyk, 95 F. Supp. 3d at 539 (citation, quotation marks, and alteration marks omitted).  Although "[a]t this stage, . . . Plaintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief."  Id. at 540.

## II.    ANALYSIS

### A.    Timeliness of Plaintiff's Claims

As the R&R explains, "claims under Section 1983, the NYSHRL, and the NYCHRL are subject to a three-year statute of limitations."  (R&R (Dkt. No. 56) at 22 (citing Owens v. Okure, 488 U.S. 235, 251 (1989); Kassner, 496 F.3d at 238; Bermudez, 783 F. Supp. 2d at 573-74))  While the statute of limitations can be extended in certain circumstances pursuant to the continuing-violation doctrine, "'[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire'" will not be actionable if they are "'time barred, even when they are related to acts alleged in timely filed charges.'"[10]  (Id. at 23 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-15 (2002)); see also Gross v. Nat'l Broad. Co., 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) ("alleged failures to compensate adequately . . .  cannot form the basis for a continuing violation claim").

Because Plaintiff filed the Complaint on November 8, 2019 (Cmplt. (Dkt. No.1), "[h]is Section 1983, NYSHRL, and NYCHRL claims based on conduct that occurred before

---

[10]  The continuing violation exception is "heavily disfavored" in this Circuit and will not be employed absent "compelling circumstances."  Zabar v. N.Y.C. Dep't of Educ., No. 18 Civ. 6657 (PGG), 2020 WL 2423450, at *4 (S.D.N.Y May 12, 2020) (citation and quotation marks omitted).

November 8, 2016 are time-barred unless the continuing violation exception to the statute of limitations applies."  (R&R (Dkt. No. 56) at 24)

Judge Cave concludes that Plaintiff's allegations of "discriminatory treatment before November 8, 2016" are discrete acts that do not trigger the continuing-violation exception, such that they are time-barred.  (Id. at 24-25)

Plaintiff's objects to this portion of the R&R only to the extent that it finds his unequal pay claims entirely barred.  (Pltf. Obj. (Dkt. No. 62) at 8-9)  Plaintiff notes that the Complaint pleads that "'from August 2016, Plaintiff frequently requested a salary increase in keeping with his new duties and the salaries of white executive and even non-executive staff. Between May 2016 and June 2017, Plaintiff complained about this pay disparity to [Brune] on several occasions, to no avail.'"  (Id. (quoting Cmplt. (Dkt. No. 1) at 10) (emphasis omitted))

To the extent that Plaintiff objects to Judge Cave's findings concerning the statute of limitations with regard to his unequal pay claims, this Court reviews the R&R de novo. Phillips, 955 F. Supp. 2d at 211.  Judge Cave's findings as to pre-November 8, 2016 conduct are reviewed for clear error.  Wingate, 2011 WL 5106009, at *1.

Given that the Complaint was filed on November 8, 2019, this Court agrees with Judge Cave that unequal pay claims predicated on conduct occurring before November 8, 2016 are time-barred.  (R&R (Dkt. No. 56) at 24-25)  Accordingly, this portion of the R&R is adopted.

As to the unequal pay claims post-dating November 8, 2016, the R&R does not acknowledge, much less address, the Complaint's allegation that Plaintiff complained to Brune about a pay disparity on several occasions "[b]etween May 2016 and June 2017."  (Cmplt. (Dkt. No. 1) at 10)  The Complaint indicates that Plaintiff continued to complain about unequal pay as his duties expanded, but Plaintiff asserts that he "did not receive a salary increase until in or

around July 2017," and only then after he threatened to file a complaint with the HRA's EEO

office.  (Id.)

> The Second Circuit explained in Pollis v. New School for Social Research, that
>
> > a claim of discriminatory pay is fundamentally unlike other claims of ongoing
> > discriminatory treatment because it involves a series of discrete, individual
> > wrongs rather than a single and indivisible course of wrongful action.  As the
> > Supreme Court explained in Bazemore v. Friday, characterizing the harm imposed
> > by a racially discriminatory pay scale, "Each week's paycheck that delivers less to
> > a [disadvantaged class member] than to a similarly situated [favored class
> > member] is a wrong actionable under Title VII, regardless of the fact that this
> > pattern was begun prior to the effective date" of limitation. 478 U.S. 385, 395-96,
> > 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986) (Brennan, J., concurring in part,
> > joined by all other members of the Court).

132 F.3d 115, 119 (2d Cir. 1997).

> The Court concludes that, at this stage of the proceedings, the Complaint's

allegations concerning unequal pay are sufficient for purposes of conduct that occurred after

November 8, 2016.  Accordingly, Plaintiff's objection is sustained as to post-November 8, 2016

unequal pay conduct.

### B.   Section 1983 Discrimination Claim

> To state a claim for employment discrimination under Section 1983, a plaintiff

must allege that the defendants "(1) act[ed] under color of state law, and (2) . . . [that their]

conduct deprived [the plaintiff] of a constitutional or a federal statutory right."  Bermudez v. City

of New York, 783 F. Supp. 2d at 575; see also Harris v. Westchester Cnty. Dep't of Corr., No.

06 CIV. 2011 (RJS), 2008 WL 953616, at *9 (S.D.N.Y. Apr. 3, 2008) ("to state a claim for

damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that

defendants were personally or directly involved in the violation, that is, that there was personal

participation by one who had knowledge of the facts that rendered the conduct illegal" (citation,

quotation marks, and alteration marks omitted)).

As the R&R notes, in order to establish a <u>prima facie</u> case of discrimination, a plaintiff may allege less favorable treatment "'than similarly situated employees of other races.'" (R&R (Dkt. No. 56) at 26) (quoting <u>Brown v. Daikin Am. Inc.</u>, 756 F.3d 219, 229 (2d Cir. 2014); <u>see</u> <u>id.</u> ("Allegations of 'adverse actions taken against employees who are not similarly situated' does not 'establish an inference of discrimination'" (quoting <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 312 (2d Cir. 2015)))) Although the question of "whether two employees are similarly situated . . . presents a question of fact, rather than a legal question to be resolved on a motion to dismiss," <u>Brown</u>, 756 F.3 at 230 (citation, quotation marks, and alteration marks omitted), "it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees were treated differently while similarly situated." <u>Sosa v. N.Y.C. Dep't of Educ.</u>, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019).

In analyzing Plaintiff's Section 1983 employment discrimination claims, Judge Cave considers the following categories of alleged discriminatory conduct: (1) denial of equal pay compared to non-Hispanic employees; (2) the 2016 Promotion Denial; (3) the 2016 Functional Demotion; (4) the 2018 Demotion and Salary Reduction; and (5) the Disciplinary Charges and Termination. (<u>See</u> R&R (Dkt. No. 56) at 25-26; <u>id.</u> at 26-34) The R&R concludes that the Complaint "adequately allege[s] [a Section 1983] Discrimination Claim based on (1) the 2016 Promotion Denial, as to Brune only, and (2) the 2016 Demotion, as to Berry only." (<u>Id.</u> at 26)

Plaintiff objects to Judge Cave's analysis concerning the Disciplinary Charges and Termination. (Pltf. Obj. (Dkt. No. 62) at 8-11) The Court will review the relevant portions of the R&R to which Plaintiff does not object for clear error, <u>Wingate</u>, 2011 WL 5106009, at *1,

and those to which he does object de novo.  Phillips, 955 F. Supp. 2d at 211.[11]

### 1.    2016 Promotion Denial

To plead a discrimination claim based on a failure to promote, a plaintiff must show that "'(1) []he is a member of a protected class; (2) []he applied and was qualified for a job for which the employer was seeking applicants; (3) []he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.'"  (R&R (Dkt. No. 56) at 27 (quoting Estate of Hamilton v. City of N.Y., 627 F.3d 50, 55 (2d Cir. 2010)))  Proof that an employer filled a position with "'a person outside the protected class who was similarly or less well qualified than'" the plaintiff also satisfies the fourth element.  (Id. (quoting Yu v. N.Y.C. Housing Dev. Corp., 494 F. App'x 122, 125 n.4 (2d Cir. 2012); see also Littlejohn, 795 F.3d at 312-13 (same)))

Plaintiff alleges that Berry, a white female, was promoted to the position of Executive Deputy Commissioner of Human Resources instead of him, and that Berry was less qualified.  (Cmplt. (Dkt. No. 1) at 4, 14-15)  The Court finds no clear error in Judge Cave's conclusion that Plaintiff has adequately alleged a Section 1983 discrimination claim against Brune based on the 2016 Promotion Denial, and adopts this portion of the R&R.  (R&R (Dkt. No. 56) at 27-29)

---

[11]  This Court has sustained Plaintiff's objection to Judge Cave's finding that his unequal pay claim is time-barred in its entirety.  To the extent that Plaintiff's Section 1983 discrimination claim is premised on a theory of unequal pay, however, the claim fails because Plaintiff has not identified a comparator – within the limitations period – who was treated more favorably.  As discussed above, "naked assertions of disparate treatment" – without identifying even one comparator who was treated more favorably – are insufficient.  Sosa, 368 F. Supp. 3d at 514; see also Goodine v. Suffolk Cty. Water Auth., No. 14 Civ. 4514 (JS)(ARL), 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017); see also Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2013 ("A plaintiff relying on disparate treatment evidence must show []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [himself]." (citation and quotation marks omitted)).

### 2.      2016 Functional Demotion

The Complaint alleges that – after Plaintiff opposed Berry's promotion – she removed certain responsibilities from his portfolio and gave these duties to a less-qualified Black woman.  (Cmplt. (Dkt. No. 1) at 15)  As the R&R notes, "'[a]n inference of discrimination can arise from circumstances including . . . the more favorable treatment of employees not in the protected group.'"  (R&R (Dkt. No. 56) at 30 (quoting Littlejohn, 795 F.3d at 312 (citation and quotation marks omitted)))  This Court finds no clear error in Judge Cave's determination the Complaint's allegations are sufficient "'to make plausible [Plaintiff's] claim that [his] demotion occurred under circumstances giving rise to an inference of discrimination.'"  (Id. (quoting Littlejohn, 795 F.3d at 313); see id. at 31)  Accordingly, this portion of the R&R is adopted.

### 3.      2018 Demotion and Salary Reduction

Although the Complaint alleges that Plaintiff suffered a demotion and salary reduction in 2018, the Complaint also explains that Plaintiff was ultimately restored to his prior position and salary, with retroactive pay and benefits.  (Cmplt. (Dkt. No. 1) at 19-21, 28)  As the R&R explains, Plaintiff's admission that his position and salary were restored is "'fatal'" to his discrimination claim.  (R&R (Dkt. No. 56) at 31 (citing, inter alia, Bonds v. Cnty. of Westchester, No. 19 Civ. 1712 (KMK), 2020 WL 4347704, at *10 n.11 (S.D.N.Y. July 28, 2020) (collecting cases holding that restoration of prior position and salary precludes a finding of an adverse employment action))  This Court finds no clear error in Judge Cave's conclusions regarding this claim.  Accordingly, this portion of the R&R is adopted.

### 4.      Disciplinary Charges and Termination

The Disciplinary Charges against Plaintiff, and his Termination, are premised on his alleged participation in a Medicaid fraud scheme.  Because Plaintiff's Section 1983

discrimination claim and Plaintiff's selective enforcement claim both rely on the Disciplinary Charges and Termination (see Cmplt. (Dkt. No. 1) at 22-27, 33, 36), Judge Cave addresses these claims together.  (R&R (Dkt. No. 56) at 31-34)

Judge Cave concludes that Plaintiff has not "plausibly allege[d] a Selective Enforcement Claim against any of the Defendants and has not adequately [pled] that the Disciplinary Charges and Termination were discriminatory based on his race and ancestry."  (Id. at 34)  Because the Complaint does not plead factual "allegations connecting his Disciplinary Charges and Termination to his race or ancestry," he has not demonstrated the existence of a "mosaic" of intentional discrimination.  (Id. at 33 (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015)))  Plaintiff's "theory that, because he was charged and terminated, and others outside his protected group were not, it must have been because he was Hispanic," rests on a "conclusory leap" that fails to "allege a plausible inference that his Hispanic background was a 'motivating factor' in the Disciplinary Charges or his Termination." (Id. at 34 (citing Mears v. Allstate Indem. Co., 336 F. Supp. 3d 141, 151 (E.D.N.Y. 2018)))  In sum, Judge Cave concludes that the Complaint does not plead facts that give rise to even a "minimal inference of discriminatory motivation."  See Littlejohn, 795 F.3d at 311.

In his objection, Plaintiff argues that Judge Cave misapplied the pleading standards on a motion to dismiss, and that this claim is sufficiently pled.  (Pltf. Obj. (Dkt. No. 62) at 9-10)  Plaintiff also argues that Judge Cave did not conduct a separate inquiry "under the more forgiving NYCHRL."  (Id. at 11)  This Court will review these issues de novo.  Phillips, 955 F. Supp. 2d at 211.

As discussed above, to plead a Section 1983 discrimination claim, "a plaintiff must allege that the employer took adverse action against [him] at least in part for a

discriminatory reason, and []he may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega, 801 F.3d at 87 (citing Littlejohn, 795 F.3d at 310); see id. at 88 (applying this standard to Section 1983 claims; "for a § 1983 discrimination claim to survive . . . a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim – and that the adverse action was taken by someone acting 'under color of state law.'" (citation omitted); id. ("A state employee acting in his official capacity is acting 'under color of state law.'").

Judge Cave concludes that Plaintiff's allegations regarding the Disciplinary Charges and his Termination – which also form the basis for his Selective Enforcement Claim – lack any connection to race or ancestry. (R&R (Dkt. No. 56) at 33); see also Vega, 801 F.3d at 88-89 (finding the plaintiff had pled a "plausible discrimination claim" because he plausibly alleged that his employer's action – a school district – occurred "'because of' his Hispanic ethnicity, that is, that his Hispanic ethnicity was a motivating factor in the employment decisions."); see id. at 89 ("Because the Complaint also alleges that [two individual defendants] each had input into personnel decisions at the High School including hiring, firing, evaluations and discipline of employees, [the plaintiff] has plausibly alleged state action for the purposes of § 1983." (citation, quotation marks, and alteration marks omitted))).

The Complaint alleges that Plaintiff was "singled-out . . . to be investigated for Medicaid Fraud," that he "was unjustifiably charged with 'Misconduct and/or Incompetence' in further discrimination and retaliation for opposing agency-wide unlawful activities and discrimination," and that "Defendants falsely pinned the Medicaid misappropriation on" him. (Cmplt. (Dkt. No. 1) at 22, 24)

Plaintiff's claims regarding the Disciplinary Charges and his Termination are supported by specific allegations demonstrating that similarly situated managers of other races as well as more senior supervisors of other races

> were part of the Medicaid payroll scheme and should have faced formal charges instead of Plaintiff[, including,] [Banks], [Brune], Laidlaw, [Yeaw], [Berry], [Neal], Villari, Rosine Ferdinand, a black female and Director of Office of Budget administration in the Finance Division[,] Joe Lamars, a white male, and Michelle Watson, a black female.
>
> . . . In fact, [Brune], [Berry], and Villari were above Plaintiff in the chain of command and personally signed documents certifying to the State annually that all 100% Medicaid funded employees were only doing Medicaid reimbursable work.
>
> . . . Moreover, Villari and Watson were supposed to review and ensure before sending certification to the State about Medicaid reimbursements that all employees were performing 100% Medicaid work but did not perform the required audits and knowingly submitted the forms with erroneously classified HRA employees.
>
> . . . Denise Deprima, the Deputy Commissioner of Labor Relations for HRA, was copied on the annual certification and knew that several employees included in that certification were not doing 100% Medicaid work, even though the annual certification indicated that they were.

(Id. at 26)

The Court concludes that the Complaint's allegations, considered as a whole, plausibly allege that the Disciplinary Charges and the Termination were motivated by discrimination premised on Plaintiff's race and ancestry.[12]  Accordingly, Plaintiff's objection

---

[12]  Plaintiff also complains that Judge Cave did not conduct a separate analysis under the NYCHRL.  (Pltf. Obj. (Dkt. No. 62) at 11)  Under the NYCHRL, courts must apply a more liberal standard than that applied under other federal and state anti-discrimination statutes. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009); Bermudez, 783 F. Supp. 2d at 592.  "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims"; "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).  Under the NYCHRL, a plaintiff need only prove "by a preponderance of the

(Pltf. Obj. (Dkt. No. 62) at 9-11) is sustained.

**C.     Retaliation Claims**

Judge Cave recommends that Plaintiff's retaliation claims be dismissed to the extent that they are based on Plaintiff's exclusion from high-level meetings, unfair criticism, the 2018 Demotion and Salary Reduction, and the rescinding of the DDC offer. (R&R (Dkt. No. 56) at 55)

Plaintiff objects to two aspects of the R&R.  As an initial matter, Plaintiff contends that Judge Cave erred in stating that Plaintiff's federal retaliation claims can be brought under only Section 1981, and not also under the Equal Protection Clause through Section 1983.[13] (Pltf. Obj. (Dkt. No. 62) at 13-14; see also R&R (Dkt. No. 56) at 35)  According to Plaintiff, his federal retaliation claim "should go forward under both Section 1981 and the Equal Protection clause."  (Pltf. Obj. (Dkt. NO. 62) at 14)

Plaintiff further contends that Judge Cave erred in concluding that his retaliation claims fail to the extent that they are premised on Defendants' alleged "sabotaging" of his application for a new position at the Department of Design & Construction (i.e., the DDC).  (See id. at 14-18)  The relevant portions of the R&R to which Plaintiff objects will be reviewed de novo.  Phillips, 955 F. Supp. 2d at 211.

**1.     Whether Retaliation Claims May Be
Brought under the Equal Protection Clause**

Judge Cave states that Plaintiff's "Retaliation Claim does not arise under Section

---

evidence that [he] has been treated less well than other employees because of [his race and ancestry]."  Id. at 110.  Here, Judge Cave did not conduct the required "separate and independent" analysis.  Given that Plaintiff's claims pass muster under the more demanding standard applicable under Section 1983, they pass muster under the NYCHRL.

[13]  Plaintiff does not disclose the practical implications of this alleged error.

1983 because '[t]he Equal Protection Clause does not protect against retaliation due to complaints of racial discrimination.'" (R&R (Dkt. No. 56) at 35 (quoting Littlejohn, 795 F.3d at 315 n.14)) She thus concludes that Plaintiff's federal retaliation claims may be pursued solely under Sections 1981, and not under the Equal Protection Clause and Section 1983. (Id.) Plaintiff contends that his federal retaliation claims should proceed under both Section 1981 and the Equal Protection Clause. (Pltf. Obj. (Dkt. No. 62) at 14 (citing Vega, 801 F.3d at 81))

In Vega, the Second Circuit "acknowledge[d] that there has been considerable confusion surrounding the viability of retaliation claims under § 1983, and . . . clarif[ied] that retaliation claims alleging an adverse action because of a complaint of discrimination [and in violation of the Equal Protection Clause] are actionable under § 1983." Vega, 801 F.3d at 80; see id. at 80-82) In sum, under Vega, retaliation claims stemming from complaints of racial discrimination are actionable under the Equal Protection Clause pursuant to Section 1983.

Accordingly, Plaintiff's objection to this portion of the R&R (Pltf. Obj. (Dkt. No. 62) at 13-14) is sustained.

## 2. Sabotage of DDC Job Offer

To state a prima facie "case of retaliation, [a plaintiff] must show that: (1) []he engaged in a protected activity; (2) h[is] employer was aware of this activity; (3) the employer took adverse employment action against h[im]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006); Lewis v. Roosevelt Island Operating Corp., 246 F. Supp. 3d 979, 990 n.6 (S.D.N.Y. 2017) ("The standard for retaliation under Title VII, § 1981, [and] § 1983 . . . is the same.").

An adverse employment action occurs where a plaintiff "'endures a "materially adverse change" in the terms and conditions of employment,'" (R&R (Dkt. No. 62) at 36 (quoting <u>Bermudez</u>, 783 F. Supp. 2d at 576) (internal citation omitted))) which can include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  (<u>Id.</u> at 37 (quoting <u>Galabya v. N.Y.C. Bd. of Ed.</u>, 202 F.3d 636, 640 (2d Cir. 2000))  A retaliation claim may also be premised on conduct that – while not directly affecting the terms and conditions of employment – is "materially adverse," such that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Burlington N. & Santa Fe Ry.  Co. v. White</u>, 548 U.S. 53, 64, 67-68 (2006) (explaining that the anti-retaliation provision of Title VII covers retaliatory conduct beyond the scope of employment conditions; "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment"; "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm"; "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (citations and quotation marks omitted)); <u>see also</u> <u>Owens v. City of New York Dep't of Educ.</u>, No. 17-CV-519 (SHS), 2021 WL 3862974, at *15 (S.D.N.Y. Aug. 30, 2021) (noting that retaliation claims under Section 1983 and Title VII "are essentially the same"))  Included among the adverse actions alleged in the Complaint is that Banks and Calhoun took action to cause the DDC to rescind its job offer to Plaintiff.  (Cmplt. (Dkt. No. 1) at 18-19)

As discussed above, the Complaint pleads that in November 2017, Plaintiff interviewed for a position at DDC.  (Id. at 18)  DDC's Commissioner told Plaintiff that she wanted to offer him the position but first needed to speak with Banks.  (Id.)  Plaintiff was not offered the job, and Plaintiff asserts, "[u]pon information and belief," that Banks and Calhoun spoke negatively about him to the DDC Commissioner "in retaliation for his claims of discrimination and opposition to supporting cronyism that benefitted white employees and job candidates."  (Id. at 19)

Judge Cave recommends that Plaintiff's retaliation claims be dismissed to the extent that they are based on his claim that Banks and Calhoun sabotaged his job application to DDC.  (R&R (Dkt. No. 56) at 37-38, 55)  Noting that Plaintiff's allegations about communications with the DDC Commissioner are made on "information and belief," Judge Cave finds that Plaintiff has not supported his "information and belief" allegations "'with a statement of facts that create a plausible inference of their truth.'"  (Id. at 37 (quoting Moore v. City of New York, No. 15 Civ. 6600 (GBD)(JLC), 2017 WL 35450, at *23 (S.D.N.Y. Jan. 3, 2017)))

In his objections, Plaintiff argues that "the R&R did not construe the facts and inferences in [his] favor when dismissing his claims that he experienced retaliation when Defendants Banks and Calhoun sabotaged his ability to obtain a new position with the [DDC]." (Pltf. Obj. (Dkt. No. 62) at 14)  The Court will review this portion of the R&R de novo.

Plaintiff has no knowledge of what Banks or Calhoun may have said to the DDC Commissioner.  Accordingly, he attempts to provide the necessary factual support for his "information and belief" allegations by citing their behavior soon after his second interview at the DDC.  (See Cmplt. (Dkt. No. 1) at 18-19)  The day after his second interview, Plaintiff passed Banks in the hallway at work.  (Id. at 18)  Banks – "who had for over one and [a] half

years avoided speaking directly to Plaintiff" – "uncharacteristically looked at Plaintiff, smiled

pleasantly," and asked Plaintiff how he was.  (Id. at 18-19)  This "out of character" behavior

"alarmed" Plaintiff.  (Id. at 19)  Plaintiff then attended a meeting where Calhoun – who "never"

spoke to Plaintiff – "greeted him with, 'Hiiiiiiii Tom' and a big smile, and waving while

wiggling" a finger.  (Id.)  Plaintiff pleads that he found Calhoun's behavior "unsettling."  (Id.)

"Two days [after these encounters], the DDC offer was rescinded."  (Id.)  Plaintiff alleges,

"[u]pon information and belief," that Banks and Calhoun "provided negative comments" about

him "to DDC, in retaliation for his claims of discrimination and opposition to supporting

cronyism that benefitted white employees and job candidates."  (Id.)

   Accepting as true Plaintiff's factual allegations, and drawing "all reasonable

inferences in" his favor, Kassner, 496 F. 3d at 237, this Court cannot reasonably infer that Banks

and Calhoun sabotaged the DDC job offer.

   While Plaintiff may plead upon information and belief facts that are peculiarly

within the possession of third parties – such as what, if anything, Banks and Calhoun said to the

DDC Commissioner, see Lindner v. Int'l Bus. Machines Corp., 06 Civ. 4751 (RJS), 2008 WL

2461934, at *5 (S.D.N.Y. June 18, 2008); see also Arista Records, LLC v. Doe 3, 604 F. 3d 110,

120 (2d Cir. 2010)); Moore, 2017 WL 35450, at *23 ("The Second Circuit has ruled that

pleading on information and belief in employment discrimination suits can suffice to meet the

relevant plausibility standard when the relevant facts are particularly within the possession,

knowledge, and control of the defendant" (collecting cases)), "information and belief"

allegations must be supported by "a statement of facts that create a plausible inference of their

truth." Moore, 2017 WL 35450, at *23 (collecting cases).

Here, the Complaint pleads that Banks and Calhoun smiled at Plaintiff, and greeted him warmly, soon after his second interview with the DDC.  (Cmplt. (Dkt. No. 1) at 18-19)  Accepting Plaintiff's assertion that Banks and Calhoun did not commonly smile at and greet him (see id.), the fact that they did soon after his second interview at the DDC does not suggest that they sabotaged his job application at the DDC.[14]  Because Plaintiff has not pled facts to support his "information and belief" allegations, Plaintiff's objection (Pltf. Obj. (Dkt. No. 62) at 14-18) is overruled, and his retaliation claims will be dismissed to the extent that they are premised on the claim that Banks and Calhoun sabotaged his job application to the DDC.[15]

Having reviewed the remaining portions of the R&R addressing Plaintiffs' retaliation claims and having found no clear error, these portions of the R&R will be adopted.

### D.     Selective Enforcement Claim

In the Complaint, Plaintiff alleges that

---

[14]  In his objections and in the Complaint, Plaintiff asserts both that the DDC Commissioner "all but promised Colon a job," and that the DDC Commissioner "rescinded [the job] offer."  (Pltf. Obj. (Dkt. No. 62) at 15-16; see also Cmplt. (Dkt. No. 1) at 18-19)

[15]  "Retaliation claims under the NYSHRL are treated the same as retaliation claims under Section 1983 and Section 1981."  Bermudez, 783 F. Supp. 2d at 576.  "Unlike retaliation claims under Section 1983 and [the] NYSHRL, [however,] the retaliation complained of under the NYCHRL need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms or conditions of employment."  Id. at 577 (citation and quotation marks omitted).  "To prevail on a retaliation claim under the NYCHRL, the plaintiff must show that []he took an action opposing h[is] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  Isbell v. City of New York, 316 F. Supp. 3d 571, 593 (S.D.N.Y. 2018) (citation, quotation marks, alteration marks omitted))

Having analyzed the DDC job offer retaliation claim under the more liberal standards of the NYCHRL, this Court concludes that the outcome is the same.  Even under the NYCHRL, Plaintiff has not alleged facts sufficient to demonstrate that Banks and Calhoun sabotaged his job application to the DDC.

> Defendants selectively charged and prosecuted Plaintiff in regard to improper Medicaid reimbursement on the basis of race and ancestry, unlike similarly situated white and non-Hispanic HRA employees.

> . . . Defendants also selectively charged and prosecuted Plaintiff in regard to improper Medicaid reimbursement based on a malicious or bad faith intent to injure Plaintiff for questioning [Banks's] and the other defendants' improper cronyism and political favors in the form of undeserved raises and hiring that violated City rules and Civil Service laws.

(Cmplt. (Dkt. No. 1) at 36)  Plaintiff's Selective Enforcement Claim is brought under the Equal Protection Clause, pursuant to Section 1983.  (Id.)

Judge Cave recommends that Plaintiff's Selective Enforcement Claim be dismissed because he "failed to plausibly allege . . . that the Disciplinary Charges and Termination were discriminator[il]y based on his race and ancestry."  (R&R (Dkt. No. 56) at 34)

Plaintiff objects to Judge Cave's recommendation concerning his Selective Enforcement Claim, arguing that she failed to address that portion of his claim "premised on Bank[s's] malicious or bad faith intent, and only analyzed the claim as one for race-based selective enforcement."  (Pltf. Obj. (Dkt. No. 62) at 12 (citing R&R (Dkt. No. 56) at 31-34)) Having reviewed the R&R, the Court agrees with Plaintiff that Judge Cave did not analyze that portion of Plaintiff's claim premised on malice and bad faith.

> The murky corner of equal protection law . . . that creates a cause of action for selective enforcement provides protection from adverse governmental action that is not motivated by legitimate governmental objectives.  Thus, if the motivation to punish is to secure compliance with agency objectives, there is no constitutional violation.  A successful plaintiff must establish that the governmental actor was motivated by reasons wholly unrelated to any legitimate state objective, a burden few are able to carry.  Nonetheless, if the complaint states a claim it must withstand the Rule 12(b)(6) motion to dismiss, regardless of the likelihood of success.

Morningside Supermarket Corp. v. New York State Dep't of Health, 432 F. Supp. 2d 334, 340-41 (S.D.N.Y. 2006) (citations, quotations marks, and alteration marks omitted); see also

Christian v. Town of Riga, 649 F. Supp. 2d 84, 95 (W.D.N.Y. 2009) ("[T]he Second Circuit has

explained that, in analyzing the second prong of selective enforcement claims [i.e., whether the

treatment of plaintiff was motivated by malice or was otherwise in bad faith], courts must

distinguish between a motivation to punish in order to secure compliance with agency objectives,

and spite, or malice, or a desire to get someone for reasons wholly unrelated to any legitimate

state objective." (citation, quotation marks, and alteration marks omitted)).

        Here, as discussed above, the Complaint contains extensive factual allegations

concerning (1) other managers' knowledge of and involvement with the alleged Medicaid payroll

fraud scheme; and (2) the fact that no charges of misconduct were brought against these other

managers and supervisors.  (Cmplt. (Dkt. No. 1) at 1-2, 22-27)  The Complaint also contains

extensive factual allegations concerning Plaintiff's role in challenging allegedly discriminatory

conduct at the HRA, including conduct engaged in by Banks.  (Id.; see also, e.g., id. at 16-17; 27-

28)  Considering the Complaint as a whole, the Court concludes that Plaintiff has plausibly

alleged – as to Banks – that the Medicaid payroll fraud disciplinary charges and his termination

were motivated by a malicious, bad faith desire to (1) punish Plaintiff for his role in opposing

discrimination at the HRA; and (2) cover up Banks's own alleged role in the Medicaid payroll

fraud scheme.  Such motivations are, of course, "wholly unrelated to any legitimate state

objective." Morningside Supermarket Corp.  432 F. Supp. 2d at 340.

        Plaintiff's objection to Judge Cave's recommendation concerning his Selective

Enforcement Claim (Pltf. Obj. (Dkt. No. 62) at 11-13) is sustained.[16]

---

[16]  The Court acknowledges that Defendants contend that certain factual findings were made in
the OATH proceeding brought against Plaintiff that have a preclusive effect here.  (See, e.g. Def.
Br. (Dkt. No. 51) at 7-8, 12-13, 22, 31; see also R&R (Dkt. No. 56) at 21-22, 34 n.4)  The Court
will decide at a later date what preclusive effect, if any, flows from determinations made in the
OATH proceeding.

III.     **Leave to Amend**

Plaintiff requests leave to amend in the event that this Court grants any aspect of Defendants' motion.  (Pltf. Br. (Dkt. No. 54) at 35)

District courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000), and "leave to amend should be freely granted when 'justice so requires.'"  Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))).  Leave to amend may be denied, however, due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment, etc."  Foman, 371 U.S. at 182.

The Court finds no error in Judge Cave's recommendation that Plaintiff "be granted leave to amend those claims that the Court has determined were inadequately pled, but denied as to those claims the Court has found are time-barred or are procedurally-barred for failure to comply with New York's notice of claim requirement," as the latter are "'not susceptible to cure.'"  (R&R (Dkt. No. 56) at 55 (quoting Trujillo v. City of New York, No. 14 Civ. 8501 (PGG), 2016 WL 10703308, at *21 (S.D.N.Y. Mar. 29, 2016), aff'd, 696 F. App'x 560 (2d Cir. 2017)))  Accordingly, leave to amend will be granted as to the claims found to be inadequately pled.

*        *        *        *

The Court has addressed all of Plaintiff's objections to the R&R.  As to those portions of the R&R to which Plaintiff did not object, the Court has reviewed them for clear error and, finding none, adopts them.

## **CONCLUSION**

Defendants' motion to dismiss (Dkt. No. 49) is granted in part and denied in part as set forth above.  Plaintiff's objections to the R&R (Dkt. No. 62) are sustained or overruled as set forth above.  The R&R (Dkt. No. 56) is adopted to the extent set forth above.  Any Amended Complaint is to be served and filed by **October 8, 2021**.

The Clerk of Court is directed to terminate the motion (Dkt. No. 49).

Dated: New York, New York
        September 26, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

36